IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | | |
|---|---|---|
| KATHRYN DUVALL, | ) | CIVIL ACTION NO.:   2:06-cv-3544 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| HONEYWELL TECHNOLOGY | ) | DEFENDANTS' MEMORANDUM IN |
| SOLUTIONS, INC., a Delaware | ) | SUPPORT OF MOTION FOR |
| corporation, and HONEYWELL | ) | SUMMARY JUDGMENT |
| INTERNATIONAL, INC., a | ) | |
| Delaware corporation, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

COME NOW the Defendants, Honeywell Technology Solutions, Inc. ("HTSI") and Honeywell International Inc. ("Honeywell"), (collectively "Defendants"), and file this Memorandum in Support of their Motion for Summary Judgment.

## I. INTRODUCTION

Defendant HTSI is a government contractor which provides technical services to various governmental agencies.  Pursuant to its contracts with the United States Government, HTSI is obligated to adhere to certain security measures contained in the National Industrial Security Program Operations Manual ("NISPOM").  Plaintiff, Kathryn Duvall, was employed by HTSI from March of 2003 until November 12, 2004, when she was terminated for numerous reasons related to her interactions with co-workers, insubordinate behavior towards her supervisors, and certain apparent irregularities in the manner in which she and other employees under her supervision charged time to government projects.

After Plaintiff was terminated, and pursuant to its obligations under NISPOM, HTSI submitted an Adverse Information Report (AIR") to the Defense Security Service ("DSS"),

detailing the particulars of some of the issues it had experienced with Plaintiff. Plaintiff has filed this lawsuit, claiming that the information in the AIR was false, and that by submitting the AIR to DSS, HTSI defamed Plaintiff. The only cause of action contained in Plaintiff's Complaint is for defamation. Plaintiff has failed to demonstrate any evidence that would create a genuine issue of material fact as to her claims against Defendants. Accordingly, Defendants are entitled to judgment as a matter of law.

## II. STATEMENT OF FACTS

HTSI provides technical computer software support to various agencies of the federal government, and has an office in Hanahan, South Carolina. Plaintiff was hired as a Project Lead in March of 2003, and was later promoted to Project Manager, then Field Engineer Manager. *See* Deposition of Kathryn Duvall at pages 21-22.[1] As Project Manager and Field Engineer Manager, Plaintiff was tasked with the overall supervision and management of various contracts between HTSI and various agencies of the federal government, including SPAWAR. (Pl.'s Dep. at 22-23.) In fact, Plaintiff's full-time office was at SPAWAR's facility, rather than HTSI's offices. (Pl.'s Dep. at 23.)

During the course of her employment with HTSI, Plaintiff clashed with both of her direct supervisors, and was counseled on multiple occasions regarding her treatment of fellow employees. *See* Exhibits 28-31 to Plaintiff's Deposition. Events reached a critical point in November of 2004, when a government customer sent an e-mail to Plaintiff's direct supervisor accusing one of Plaintiff's subordinate's of improperly charging a significant amount of time to a project on which she had not been working. While investigating this allegation, Plaintiff's supervisor, John Samios, learned that Plaintiff had directed her subordinate to charge her time to

---

[1] A copy of the cited portions of the transcript of the deposition of Kathryn Duvall is attached as Exhibit A to this Memorandum, and will hereinafter be cited as (Pl's Dep. at __.).

2

one project, even though the subordinate was working on another project. Samios also discovered that Plaintiff had tasked another employee with work on a project which Samios had previously directed was not to be charged for any time without his express approval. Finally, Samios learned that Plaintiff had apparently negotiated a change order with a government customer on a delivery order for which she had no responsibility. *See* Exhibit 32 to Plaintiff's Deposition.

Based on all of these discoveries, and other problems with Plaintiff's conduct, Plaintiff was terminated on November 12. Plaintiff was called into Samios' office, and was handed a termination letter that outlined five specific bases for termination. *See* Exhibit 6 to Plainitff's Deposition. Plaintiff claims she stated that the letter was not true, and she was advised to contact human resources to discuss any dispute she had with the contents of the letter. Because she had already accepted an offer of employment with a competitor of HTSI, Plaintiff now says that she did not see the point in doing so. (Pl.'s Dep. at 23-24.) Subsequent to her termination, Plaintiff did request a copy of the Letter of Reprimand referenced in the termination letter. Once she received the letter of reprimand, she wrote an e-mail to HTSI's human resources representative, challenging the accuracy of that one portion of the termination letter. (Pl.'s Dep. at 92-93.) Plaintiff admits, however, that she did not address the other four issues discussed in the termination letter in this e-mail or in any other manner at any time, and never said anything to anyone at HTSI to dispute the other four issues raised in the termination letter. (Pl.'s Dep. at 97.)

As a government contractor, HTSI is subject to the requirements of the ("NISPOM"). Pursuant to NISPOM, a contractor is required to submit an Adverse Information Report ("AIR") to the Defense Security System ("DSS") if it becomes aware of any of a number of circumstances. One of these circumstances is when a contractor learns of any "adverse

3

information" concerning any of their cleared employees. *See* National Industrial Security Program Operations Manual, §1-302.[2] The NISPOM makes clear that "[t]he subsequent termination of employment of an employee does not obviate the requirement to submit this report." *Id.* "Adverse information" is defined as "[a]ny information that adversely reflects on the integrity or character of a cleared employee . . . ." (*See* Ex. B at page C-1.)

     Subsequent to Plaintiff's termination, and pursuant to its obligations under the NISPOM, HTSI's Facility Security Officer submitted an AIR to Michael Stritch, the DSS officer responsible for receipt of AIR's at the SPAWAR facility where Plaintiff had been employed by HTSI. The contents of the AIR were nearly identical to the contents of Plaintiff's termination letter. *See* Exhibit 7 to Plaintiff's Deposition. Mr. Stritch confirmed via e-mail that the AIR was warranted. *See* Exhibit 9 to Plaintiff's Deposition. Plaintiff claims that because of the AIR, she was barred from accessing certain classified areas of SPAWAR, but admits that this had no impact on her employment with her new employer, and did not cause her any lost wages. (Pl.'s Dep.at 27-28.)

     Although Plaintiff believes the fact that her security clearance was flagged for some period of time has caused some of her business acquaintances to think differently of her, she does not believe that any of those people even knew about the AIR submitted by Honeywell. (Pl.'s Dep. at 53-54.) Indeed, although her entire defamation claim is based upon the contents of the termination letter and the AIR, Plaintiff has no knowledge that anyone at Honeywell ever discussed either document or their contents with anyone outside of Honeywell, except for the person at DSS to whom the AIR was submitted, or that anyone else within or outside of Honeywell ever saw the termination letter or AIR. (Pl.'s Dep. at 36-37, 56-57, 60-63.) The only

---

[2] A copy of relevant portions of the NISPOM is attached as Exhibit B to this Memorandum.

4

people Plaintiff can identify who are aware of the contents of the termination letter or the AIR are people with who she shared that information. (See Pl.'s Dep. at 54,59.)

### III. ARGUMENT

Defendants are entitled to Summary Judgment on Plaintiff's only claim. Plaintiff has not established that the termination letter was published to anyone. The only publication of the AIR was to DSS, and that communication is absolutely privileged. Even if the Court were to view the communication of the AIR to DSS as only subject to a qualified privilege, Plaintiff has presented no evidence to show that Defendants abused that privilege.

A.    **Summary Judgment Standard.**

The United States Supreme Court has emphasized the importance of summary judgment procedure under Rule 56:

> In our view, the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to the party's case, and on which that party will bear the burden of proof at trial. In such a situation, there could be "no genuine issue as to any material fact … since a complete failure of the nonmoving party's case necessarily renders all other facts immaterial." The moving party is "entitled to judgment as a matter of law" because the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof.
>
> ***
>
> [T]he burden on the moving party may be discharged by "showing" - - that is pointing out to the district court - - that there is an absence of evidence to support the nonmoving party's case.

*Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).

In order to establish that a genuine issue of material fact exists, the Plaintiff must show that there is evidence upon which a finder of fact can reasonably hold in her favor. *Anderson v.*

5

*Liberty Lobby Inc.*, 477 U.S. 242, 252 (1986).  Under this standard, the existence of a mere scintilla of evidence in support of the Plaintiff's position is insufficient to withstand the summary judgment motion.  *Id*. at 252.  Likewise, conclusory allegations or denials, without more, are insufficient to preclude the granting of the summary judgment motion.  *Ross v. Communications Satellite Corp*., 759 F.2d 355, 365 (4th Cir. 1985).

"Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.  Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson*, 477 U.S. at 248.  In making a determination on genuineness of a factual issue, the court must examine the entire record before it.  "Genuineness means that the evidence must create fair doubt; wholly speculative assertions will not suffice.  A trial, after all, is not an entitlement.  It exists to resolve what reasonable minds would recognize as real factual disputes." *Id.* at 364.

        **B.**      **Plaintiff Cannot State A Claim Against Defendants For Defamation.**

In South Carolina, the elements of a claim of defamation are as follows: (1) a false and defamatory statement concerning another; (2) an unprivileged publication to a third party; (3) fault on the part of the publisher; and (4) either actionability of the statement irrespective of special harm or the existence of special harm caused by the publication.  *Holtzscheiter v. Thomson Newspapers, Inc*., 332 S.C. 502, 518, 506 S.E. 2d 497, 506 (1998).

Even viewed in the light most favorable to her, Plaintiff's claim fails on the second element.  She simply has not shown any unprivileged publication to any third party.  Plaintiff freely admits that she has no evidence that Defendants communicated the contents of the termination letter to anyone.  Despite being given numerous opportunities to identify anyone at HTSI or outside of HTSI with whom HTSI shared the contents of the termination letter or the

6

AIR, Plaintiff could identify no one but the DSS officer to whom the AIR was submitted. (Pl.'s Dep. at 36-37, 56-57, 60-63.)  The only other possible defamatory statements alleged by Plaintiff were comments made by HTSI statements made to Plaintiff when she came to work at SPAWAR with her new employer.  Plaintiff described these comments as "derogatory, in-passing comments" such as one HTSI employee saying, "Oh, they let you back in this place?"  (Pl.'s Dep. at 33-34.)  Even if these comments could be considered defamatory, which Defendants expressly deny, Plaintiff has admitted that she is not aware of anyone who heard any of these remarks.  (Pl.'s Dep. at 35.)

Accordingly, the only allegedly defamatory statement that Plaintiff can point to is the submission of the AIR by HTSI to the United States Department of Defense's Defense Security Service.  This communication cannot form the basis of a defamation claim, however, as it is absolutely privileged.  The United States Court of Appeals long ago concluded "[t]hat an utterance plainly commanded by the duties of the author to the Government has been repeatedly recognized as unconditionally privileged . . .." *Becker v. Philco Corp.*, 372 F.2d 771, 775 (4th Cir. 1967).  The court in *Becker v. Philco* was faced with the question of whether a government contractor could be held liable for defamation because of a report filed pursuant to an earlier version of NISPOM.  The court did not even consider whether the report was true or false, focusing instead on the fact that "no open publication of the alleged libel was made, but only a confidential transmittal within the internal operations of the government." *Id.* at 774-75.  The court then concluded "that an action for libel will not lie in the circumstances against a private party fulfilling its governmentally imposed duty to inform." *Id.* at 776.

Even were this Honorable Court to find that the AIR was not an absolutely privileged communication, the AIR would still certainly be entitled to qualified privilege.  A defamation

7

action by a former employee against a former employer may be defended by showing that the defamatory statement was subject to a qualified or conditional privilege. A qualified or conditional privilege "is an affirmative defense, and the burden of pleading it 'rests with the defendant.'" *Ridpath v. Bd. of Governors Marshall Univ.*, 447 F.3d 292, 305 (4th Cir. 2006) (quoting *Gomez v. Toledo*, 446 U.S. 635, 640 (1980)). Once the defendant establishes that the statement was privileged, the burden shifts to the plaintiff to prove that the defendant abused the privilege. *See Snuffer v. Motorist Mut. Ins.*, 1987 WL 44776, at *3 (4th Cir. Sept. 9, 1987).

In the employer-employee context, the qualified privilege defense is most often based on "a communication made in good faith, on a subject matter in which the person communicating has an interest, or owes a duty, legal, moral or social, if made to a person having a corresponding interest or duty.'" *Swengler v. ITT Corp. Electro-Optical Prods. Div.*, 993 F.2d 1063, 1071 (4th Cir. 1993) (quoting *Great Coastal Express, Inc. v. Wellington*, 334 S.E.2d 846, 853 (Va. 1985)). If the defendant asserts the affirmative defense of conditional or qualified privilege, the defendant will not be liable for defamation if "(1) the matter is published upon an occasion that makes it conditionally privileged, and (2) the privilege is not abused." *Swinton Creek Nursery v. Edisto Farm Credit, ACA*, 514 S.E.2d 126, 134 (1999) (citing *Bell v. Bank of Abbeville*, 38 S.E.2d 641, 643 (1946)).

> In determining whether or not the communication was qualifiedly privileged, regard must be had to the occasion and to the relationship of the parties. When one has an interest in the subject matter of a communication, and the person (or persons) to whom it is made has a corresponding interest, every communication honestly made, in order to protect such common interest, is privileged by reason of the occasion. The statement, however, must be such as the occasion warrants, and must be made in good faith to protect the interests of the one who makes it and the persons to whom it is addressed.

*Id.* (citing *Bank of Abbeville*, 38 S.E.2d at 643). "Where the occasion gives rise to a qualified privilege, there is a prima facie presumption to rebut the inference of malice, and the burden is

8

on the plaintiff to show actual malice or that the scope of the privilege has been exceeded." *Id.* at 484-85 (citing *Fulton v. Atlantic Coast Line R. Co.*, 67 S.E.2d 425 (1951); 53 C.J.S. *Libel and Slander* § 79 (1987)).

After the defendant establishes qualified privilege, the burden shifts to the plaintiff to prove actual malice. In order to do so, the plaintiff "must show that the defendant was activated by ill will in what he did, with the design to causelessly and wantonly injure the plaintiff; or that the statements were published with such recklessness as to show a conscious disregard for plaintiff's rights." *Id.* at 485.

It is without dispute that HTSI had a duty to the Department of Defense to report the adverse information it learned about Plaintiff. Having established this qualified privilege, the burden is now on Plaintiff to prove actual malice in order to prevail on her defamation claim. Plaintiff has made absolutely no effort to show actual malice. In fact, Plaintiff offers nothing more than her own self-serving opinion about her two supervisors. "John Samios did not like me and he was trying to finish off the job that Scott Ledwell started." (Pl.'s Dep. at 121.) Of course, Plaintiff made this statement immediately after she admitted that she had no evidence to indicate that HTSI actually knew the things it was reporting in the AIR were false, but rather, it was her belief that HTSI could have figured out the allegations were not true if they had talked to her some more. (Id.) This is a far cry from showing actual malice. Accordingly, Defendants are entitled to a judgment as a matter of law on Plaintiff's defamation claim.

## IV. CONCLUSION

For all of the foregoing reasons, Defendants are entitled to Summary Judgment on Plaintiff's only claim against them, and respectfully request that the Court dismiss Plaintiff lawsuit in its entirety.

Dated this the 30th day of November, 2007.

        Respectfully submitted,

        By: s/ *Benjamin P. Glass*
           Benjamin P. Glass
           Federal Court Id. No. 6522

        Attorneys for Defendants

OGLETREE, DEAKINS, NASH,
SMOAK & STEWART, P.C.
211 King St., Suite #200
Charleston, South Carolina 29401
(843) 853-1300 (Office)
(843) 853-9992 (Fax)
ben.glass@ogletreedeakins.com

2:06-cv-03544-CWH    Date Filed 11/30/07    Entry Number 36-1    Page 10 of 11

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | | |
|---|---|---|
| KATHRYN DUVALL, | ) | CIVIL ACTION NO.: 2:06-cv-3544 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| HONEYWELL TECHNOLOGY | ) | |
| SOLUTIONS, INC., a Delaware | ) | CERTIFICATE OF SERVICE |
| corporation, and HONEYWELL | ) | |
| INTERNATIONAL, INC., a | ) | |
| Delaware corporation, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

I hereby certify that a copy of the foregoing Memorandum in Support of their Motion for Summary Judgment was this date served upon counsel of record via the CM/ECF system in accordance with the applicable rules of civil procedure.

Dated this 30th day of November, 2007.

*s/ Benjamin P. Glass*     ___
Benjamin P. Glass

11