**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION**

| | | |
|---|---|---|
| Kathryn Duvall, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No.: 9:06-3544-CWH |
| | ) | |
| versus | ) | |
| | ) | |
| Honeywell Technologies Solutions, Inc., | ) | **ORDER** |
| Honeywell International, Inc., | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

On November 9, 2006, the plaintiff, Kathryn Duvall ("Duvall") brought an action for defamation against Honeywell and Honeywell International Corporation in the South Carolina Court of Common Pleas. She generally alleges that the defendants made false statements regarding the grounds of her termination in an effort to revoke her security clearance. On December 15, 2006, the action was removed to this court. On November 30, 2007, the defendants filed a motion for summary judgment.

I. Plaintiff's Allegations

Duvall, a computer security expert, began working for Honeywell Technology Services, Inc. ("Honeywell") in March of 2003. Honeywell provides technical computer software support to various federal agencies and has an office in Hanahan, South Carolina. Duvall clashed with her supervisors. In November of 2004, a government customer e-mailed John Samios ("Samios"), Duvall's supervisor, and accused one of Duvall's subordinates of improperly charging time at Duvall's direction on a project on which she had not been working. On November 12, 2004, Duvall was summoned to Samois's office and was given a letter of

termination informing her that she was being terminated because:

> 1. Duvall was given a letter of reprimand for refusing to follow the instructions of her former supervisor, Scott Ledwell;
> 2. Duvall intimidated another employee in order to determine who made reports against her;
> 3. Duvall instructed an employee to charge time on a project although the employee had not been working on that project;
> 4. Duvall inappropriately charged labor hours to a project and directed an employee to do likewise;
> 5. Duvall re-negotiated a task order with the government and directed an employee to change the cost estimate;

Duvall denied the accuracy of the termination letter and was advised to contact human resources.

Duvall requested the letter of reprimand referenced in the first item of the termination letter.

Human resources sent Duvall a copy of the letter of reprimand. Duvall informed human resources that she never received the letter of reprimand at the time of her alleged refusal to follow her supervisor's instructions and that the contents of the letter of reprimand are false.

Duvall did not challenge the other items in the termination letter.

As a government contractor, Honeywell is subject to the operating manual of the National Industrial Security Program. Section 3 provides:

> I-302 Reports to be Submitted to the CSA
> a. Adverse Information Contractors shall report adverse information coming to their attention concerning any of their cleared employees. Reports based on rumor or innuendo should not be made. The subsequent termination of employment of an employee does not obviate the requirement to submit this report. If the individual is employed on a Federal installation, the contractor shall furnish a copy of the report and its final disposition to the commander or head of the installation.
> NOTE: In two court cases, Becker vs. Philco and Taglia vs Philco (389 U.S. 979), the U.S. Court of Appeals for the 4th Circuit decided on February 6, 1967, that a contractor is not liable for defamation of an employee because of reports made to the Government under the requirements of this Manual and its previous versions.

The manual defines "Adverse Information" as "any information that adversely reflects on the

integrity or character of a cleared employee, that suggests that his or her ability to safeguard classified information may be impaired, or that his or her access to classified information clearly may not be in the best interests of national security."

Immediately following Duvall's termination, Honeywell sent an adverse information report to an officer responsible for such reports at the federal facility where Duvall had been working. The officer confirmed that the report was warranted.

Following her termination, Duvall found employment with General Dynamics. Because of the adverse information report, Duvall's security clearance was flagged for approximately 30-45 days, and she was unable to work in secured areas. This had no impact on her wages or new employment.

The allegedly defamatory documents at issue are the termination letter and adverse information report. In her deposition, Duvall admitted that she has no knowledge that anyone at Honeywell published the contents of these documents with anyone other than the government officer who received the adverse information report. Duvall claims that her security restriction following her termination changed other business acquaintances' opinion of her.

III. Summary Judgment Standard

Rule 56 of the Federal Rules of Civil Procedure provides that summary judgment shall be rendered if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to summary judgment as a matter of law. Summary judgment is proper only where the moving party is entitled to judgment as a matter of law, where it is clear what the truth is, and where no genuine issue remains for trial. Poller v. Columbia Broadcasting

Sys., Inc., 368 U.S. 464 (1962).

IV.  Defamatory Statements

To recover for defamation, a plaintiff must show: (1) a false and defamatory statement concerning the plaintiff; (2) an unprivileged publication to a third party; (3) fault on the part of the publisher; and (4) either actionability of the statement irrespective of special harm or the existence of special harm caused by the publication. Holtzscheiter v.Thomson Newspapers, Inc., 506 S.E. 2d 497, 506 (1998).

    A.  Termination Letter and Adverse Information Report

        1.  No False and Defamatory Statement

There is no evidence that the contents of the termination letter and adverse information report are false.  The letter and adverse information report accurately state that Duvall was terminated for the reasons given by Honeywell.  Duvall has failed to raise a genuine issue of material fact as to the falsity of the termination letter and adverse information report.

        2.  No Unprivileged Publication to a Third Party

Duvall admits that she has no knowledge that these documents were published to a third party.  However, she argues that no publication is necessary because Honeywell's conduct of terminating her employment coupled with a suspended access to secured areas constitutes slander by action and insinuation.

In South Carolina, a defamatory insinuation may be actionable if it is false and malicious and the meaning is plain. Tyler v. Macks Stores of S.C., Inc., 272 S.E.2d 633, 634 (S.C. 1980) (overruling dismissal of employee's complaint on the employer's demurrer where plaintiff alleged that his discharge following the giving of a polygraph test and the immediate firing of a

manger gave coworkers and others the impression that the plaintiff had been discharged for wrongful activity); Timmons v. News and Press, Inc., 103 S.E.2d 277, 280 (S.C. 1958) (overruling dismissal of complaint on the newspaper publishers demurrer where the plaintiff store owner alleged that the newspaper publisher was aware that the plaintiff's store was the only "back lot" store in town and that photograph accompanying newspaper article clearly showed the plaintiff's store and that the article maliciously and falsely accused the plaintiff of dealing in bay rum as a beverage to the extent that his store was the center of a plague of bay rum drinkers).

Honeywell argues that there can be no defamatory insinuation because the plaintiff admits that she has no knowledge that anyone knew of the existence of the termination letter or adverse information report. In Timmons v. News and Press, Inc., third parties knew of the newspaper article's existence and deduced that the article reported a bay rum plague perpetrated by the plaintiff's store. 103 S.E.2d 277, 280 (S.C. 1958). Duvall argues that her case is analogous to Tyler v. Macks Stores of S.C., Inc., 272 S.E.2d 633 (S.C. 1980). Because business acquaintances knew of her termination and subsequent suspended access to secured areas, these business acquaintances could insinuate that her character was in question. Assuming that an insinuation can be made, Duvall can only recover if such an insinuation is false and malicious and the meaning plain. Id. at 634.

       a. Falsity

There is no evidence that the contents of the termination letter and adverse information report are false. The letter and adverse information accurately report that Duvall was terminated for the reasons that Honeywell gave for terminating her. Duvall has failed to raise a genuine issue of material fact as to the falsity of the termination letter and adverse information report.

### b. Malice

There is no evidence that the termination letter and adverse information report were made with malice. Common law actual malice means that the defendant acted with ill will toward the plaintiff or recklessly or wantonly, meaning with conscious indifference of the plaintiff's rights. Murray v. Holnam, 542 S.E.2d 743, 750 (S.C. Ct. App. 2001). Duvall has failed to present direct or circumstantial evidence to show that the defendant published the statements improperly or in an unjustified manner or with improper or unjustified motives. Id.; Anderson v. Augusta Chronicle, 619 S.E.2d 428, 432 (S.C. 2005) ("[S]ubjective awareness of probable falsity can be shown if there are obvious reasons to doubt the veracity of the informant or the accuracy of the reports.").

Duvall alleges that Honeywell fabricated its documentation after discharging Duvall. However, the record includes e-mails prior to the plaintiff's termination between human resources at Honeywell and Duvall's supervisor, Staimos, discussing the charges set forth in the termination letter and adverse information report. The plaintiff's "[u]nsupported speculation is not sufficient to defeat a summary judgment motion." Felty v. Graves Humphreys Co., 818 F.2d 1126, 1128 (4th Cir. 1987).

Duvall argues that malice is a question of fact for the jury. "Proof that statements were published in an improper or unjustified manner is sufficient to submit the issue of malice to a jury." Hainer v. Am. Med. Int'l, Inc., 492 S.E.2d 103, 106-07 (S.C. 1997). However, nothing in the record indicates that the termination letter or adverse information report were published in an improper or unjustified manner.

### c. Plain Meaning

Honeywell argues that the meaning of the termination letter and adverse information report is not plain to support slander by action because the plaintiff admits that she has no knowledge that anyone knew of the existence of the termination letter or adverse information report. Duvall has not stated whether suspended access to secured areas often or occasionally follows a change in employment.

### 3. No Fault on the Part of the Publisher

The record does not show that Honeywell was at fault in giving a letter of termination to Duvall or an adverse information report to the government. Honeywell reported information adversely reflecting on the plaintiff's character in accordance with Section 3 of the operating manual of the National Industrial Security Program. As stated above, nothing in the record indicates that the termination letter or adverse information report were published in an improper or unjustified manner. There is no genuine issue of material fact for trial concerning fault on the part of Honeywell.

### 4. Harm to Reputation or Special Damages

Damages are presumed in this case because the plaintiff has alleged a communication imputing a matter incompatible with a plaintiff's business or trade. Holtzscheiter v. Thomson Newspapers, Inc., 506 S.E.2d 497, 506 (S.C. 1998).

## B. Privilege

### 1. Absolute Privilege

Honeywell claims that the adverse information report is privileged. In Becker v. Philco Corp., 372 F.2d 771, 773-74 (4th Cir. 1967), the Fourth Circuit Court of Appeals held that an employer, who was required under a defense contract to report any loss, compromise, or

suspected compromise of classified information, acted as an agent of the United States government in reporting a suspected breach and was therefore absolutely immune from liability for alleged defamation.

> To be predominantly emphasized here is that the contract embraces reports by Philco to the Government not only of actual but of each suspected compromise of classified information. Equally important, the company has no discretion and is mandatorily ordered to report the suspicion immediately. There is no question but that the system of reporting was valid. The obligation could scarcely be couched in more imperious or exacting language. It embraces both true and false accusations, both substantial and insubstantial suggestions, perhaps encompassing even rumors. It demands investigation of them by the company and a report of it to the Defense Department. That is precisely what Philco did. Faithful to the contract, it could have done no less.

Id. at 773-74.  Duvall argues that Becker is inapplicable because the operating manual of the National Industrial Security Program provides that "reports based on rumor or innuendo should not be made."

The record does not show that Honeywell submitted the adverse information report on the basis of rumor or innuendo.  Honeywell was required to report "any information that adversely reflects on the integrity or character of a cleared employee, that suggests that . . . her ability to safeguard classified information may be impaired, or that . . . her access to classified information clearly may not be in the best interests of national security."  Honeywell terminated Duvall's employment for reasons that adversely reflected on her character.  For example, dishonest time records and billing suggests that Duvall may not be able to honestly safeguard classified information and that her access to classified information may not be in the best interests of national security.  This case is analogous to Becker v. Philco Corp. because Honeywell acted as an agent of the federal government when it reported information adversely reflecting on Duvall's integrity or character.  Honeywell's submission of the adverse information

report to the federal government is absolutely privileged.

        2.  Qualified Privilege.

Duvall argues that the adverse information report is only qualifiedly privileged and that the adverse information report is not protected because Honeywell acted with malice.  Even if a qualified rather than absolute privilege applies, the adverse information report is nonetheless protected.  Nothing in the record suggests that Honeywell made the adverse information report with malice, nor does the record show that the adverse information report was published in an improper or unjustified manner.  Honeywell did not abuse a qualified privilege in making the adverse information report.

The plaintiff has failed to raise a genuine issue of material fact for trial.  The defendants' motion for summary judgment is granted.

**AND IT IS SO ORDERED.**

_C. Weston Houck_
_____

**C. WESTON HOUCK**
**UNITED STATES DISTRICT JUDGE**

February 6, 2008
Charleston, South Carolina